UNITED STATES OF AMERICA,

        Plaintiff,

                                   Case No. 22-cv-621-pp

    v.

MARK D. PETERS,
and ROSEMARY L. PETERS,

        Defendants.

**ORDER DENYING DEFENDANTS' MOTION FOR DISCLOSURE OF ALL
GRAND JURY PROCEEDINGS (DKT. NO. 39), DENYING DEFENDANTS'
MOTION FOR DISMISSAL, DUE PROCESS VIOLATION, WANT OF
JURISDICTION (DKT. NO. 40), GRANTING PLAINTIFF'S MOTION FOR
SUMMARY JUDGMENT (DKT. NO. 24) AND TERMINATING CASE**

## I.    **Background**

      The plaintiff filed this case to collect unpaid federal income taxes from
both defendants. In its pending motion for summary judgment, the plaintiff
asks the court to enter judgment (1) against both defendants for their joint
unpaid federal income tax, penalties and interest for 2008; (2) against Mark
Peters for the years 2009, 2010 and 2011; and (3) against Rosemary Peters for
the year 2009. Dkt. No. 24. The plaintiff complied with Civil Local Rule 56(a)
(E.D. Wis.). Id. at 2-12. Along with a statement of undisputed facts, the plaintiff
filed declarations from an IRS officer and agent and a declaration from counsel
documenting that the plaintiff's requests for admission were served on the
defendants (but never answered). Dkt. Nos. 26-29.

      The defendants filed a brief in opposition with exhibits, dkt. no. 31, their
late response to interrogatories, dkt. no. 32, and an additional memorandum of
law, dkt. no. 33. The defendants do not acknowledge the authority of the

plaintiff to collect income taxes, arguing that the "U.S. Congress written law" does not cover revenue that "is **not** internal to the United States of America lands" and that there is no evidence that they "had revenue internally **in** any of the United States of America land." Dkt. No. 31 at 1 (emphasis in original). They cite the Articles of Confederation to support their argument that the plaintiff lacks standing because the "identifying name does not match exactly what the stated constitution demands." Id. at 2. The defendants assert that they have a common law marriage "independent of any state of 'The United States of America.'" Id. at 3. In addition, they insist they "have not elected to become United States citizens." Id. at 4.

After the government filed a reply brief, dkt. no. 34, the defendants filed another response with exhibits, dkt. no. 35, and an "opposition affidavit," dkt. no. 36. They next filed a motion for disclosure of all grand jury proceedings. Dkt. No. 39. On February 12, 2024, the court granted the plaintiff's unopposed motion to strike the defendants' unauthorized sur-reply and exhibits and said that it would not consider them on summary judgment. Dkt. No. 41. The defendants filed another response to summary judgment. Dkt. No. 42. Three days later, the defendants filed an amended response. Dkt. No. 43.

The court's local rules allow the moving party to file a brief in support of the motion, the non-moving party to file an opposition brief and the moving party to file a reply. Civil Local Rule 56(b) (E.D. Wis.). The defendants have filed briefs and exhibits in opposition to the summary judgment motion that are not authorized by the rules. They did not ask the court's permission to file those documents. The court has considered only properly filed documents in analyzing the plaintiff's motion. Even if the court had considered all the defendants' submissions, it still would have concluded—as it does in this

order—that the defendants have failed to raise a genuine issue of material fact sufficient to warrant the court denying judgment in favor of the plaintiff.

## II. Plaintiff's Motion for Summary Judgment (Dkt. No. 24)

### A. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). "Material facts" are those that, under the applicable substantive law, "might affect the outcome of the suit." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute over a material fact is "genuine" "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id.

A moving party "is 'entitled to a judgment as a matter of law' " when "the nonmoving party has failed to make a sufficient showing on an essential element of [its] case with respect to which [it] has the burden of proof." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Still,

> a party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.

Id. (internal quotation marks omitted).

To determine whether a genuine issue of material fact exists, the court must review the record, construing all facts in the light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor. See Heft v. Moore, 351 F.3d 278, 282 (7th Cir. 2003) (citing Liberty Lobby, 477 U.S. at 255). "However, [the court's] favor toward the nonmoving party does not extend to drawing inferences that are supported by only speculation or

conjecture." <u>Fitzgerald v. Santoro</u>, 707 F.3d 725, 730 (7th Cir. 2013) (quoting <u>Harper v. C.R. Eng., Inc.</u>, 687 F.3d 297, 306 (7th Cir. 2012)); <u>see also</u> <u>Smith v. Lamz</u>, 321 F.3d 680, 683 (7th Cir. 2003) ("A district court is not required to wade through improper denials and legal argument in search of a genuinely disputed fact. And a mere disagreement with the movant's asserted facts is inadequate if made without reference to specific supporting material.") (internal quotations and citations omitted)). "[T]o survive summary judgment, the non-moving party must establish some genuine issue for trial 'such that a reasonable jury could return a verdict' in her favor." <u>Fitzgerald</u>, 707 F.3d at 730 (quoting <u>Makowski v. SmithAmundsen LLC</u>, 662 F.3d 818, 822 (7th Cir. 2011)).

B.    <u>Statement of Material Facts</u>

1.    *Procedural Background*

a.    The Discovery Period

The court's December 7, 2022 scheduling order required the parties to complete discovery by April 1, 2023. Dkt. No. 14. The plaintiff's trial counsel avers in her May 15, 2023 declaration that on October 13, 2022, she served the plaintiff's first requests for admission on defendant Mark Peters via email, as agreed. Dkt. No. 29 at ¶¶2-3. She attached a copy of the email delivery confirmation. Dkt. No. 29-2. She avers that on the same date—October 13, 2022—she served defendant Rosemary Peters with the plaintiff's first requests for admission via overnight mail (Federal Express). Dkt. No. 29 at ¶¶4-5. She attached the FedEx delivery confirmation. Dkt. No. 29-4. The plaintiff's statement of undisputed material facts explains that neither defendant responded to the plaintiff's Rule 36 requests for admission with thirty days.

Dkt. No. 26 at 2 n.1, 3 n.2 (citing Dkt. No. 29 at ¶¶7-8); see also, Dkt. No. 29 at ¶¶2-6.

> b.     The Summary Judgment Materials

The December 2022 scheduling order required any party wishing to move for summary judgment to do so by May 15, 2023. Dkt. No. 14. Under Civil L.R. 56(b)(2), the non-moving party's opposition materials were due within thirty days of service—on or about June 14, 2023. The moving party's reply was due within fourteen days after service of the opposition materials—around June 28, 2023.

Civil Local Rule 56(a) mandates special procedures in cases where a party is representing himself or herself and the opposing party files for summary judgment. The rule requires the moving party to include in its motion "a short and plain statement that any factual assertion in the movant's affidavit, declaration, or other admissible documentary evidence will be accepted by the Court as being true unless the party unrepresented by counsel submits the party's own affidavit, declaration, or other admissible documentary evidence contradicting the factual assertion." Civil L.R. 56(a)(1)(A). The rule also requires the moving party to include with its motion "the text to Fed. R. Civ. P. 56(c), (d), and (e) [the federal rule governing summary judgment], Civil L.R. 56(a), Civil L.R. 56(b), and Civil L.R. 7 [the local rule governing motions in general]." Civil L.R. 56(a)(1)(B).

The plaintiff timely filed its summary judgment motion on May 15, 2023. Dkt. No. 24. In the motion, the plaintiff recounted that the defendants were not represented by counsel. Id. at 2. They included in the motion this statement: ". . . the declarations filed in support of this brief, and the exhibits thereto, will be accepted by the Court as being true unless the responding defendant submits

his or her own affidavits, declarations, or other admissible documentary evidence contradicting the factual assertions therein. *See* L.R. 56(a)(1)(A)." Id. The plaintiff also included the verbatim language from Fed. R. Civ. P. 56(c), (d) and (e), the full text of Civil L.R. 56 and Civil L.R. 7. Id. at 3-12. The plaintiff fully complied with the court's local rule, and the defendants had notice that the court would accept as true any of the plaintiff's factual assertions that were supported by admissible evidence unless the defendants produced their own evidence that contradicted the plaintiff's proposed findings.

On June 16, 2023, the court received from the defendants a brief in opposition to the motion for summary judgment (and attached exhibits), dkt. nos. 31, 31-1, their responses to the plaintiff's first set of interrogatories, dkt. no. 32, and a memorandum of law, dkt. no. 33. The defendants did not file a response to the plaintiff's proposed findings of fact. The exhibits the defendants attached to their opposition brief included their own notarized affidavit, which disputes statements in the verified declarations of the IRS revenue officer/advisor (Dkt. No. 27). the IRS agent (Dkt. No. 28) and the plaintiff's counsel (Dkt. No. 29). Dkt. No. 31-1 at 1-4, and screen shots of portions of what appear to be either statutes or federal regulations (Dkt. No. 31-1 at 5-9). This is the only evidence the defendants provided the court.

The affidavit the defendants attached as an exhibit to their opposition brief is dated June 13, 2023. Dkt. No. 31-1 at 3. It avers that the defendants "first opened the discovery on 10/15/2023, and they were only Plaintiff's 'First Request for Interrogatories'." Dkt. No. 31-1 at 2, ¶18 (emphasis in original). They averred that they "have never received any 'Plaintiff's First Request for Admissions'." Id. at 3, ¶21. Yet they also averred that they "did respond to Plaintiff's 'First Requests for Admission'. See EXHIBIT _____ hereto attached."

6

Id. at 2, ¶19 (emphasis in original). The defendants averred that they "first saw Plaintiffs Request for Admissions . . . on or about 6/5/22 when doing this response to summary judgment," and stated that they would "mail, and email, an answer to the 'Plaintiff's First Request for Admissions' on the date of 6/9/23. See attached as EXHIBIT 'MR1'." Id. at 3, ¶24.[1]

Along with their opposition brief, the defendants filed a document titled "Respondents, response to 'United States First Set of Interrogatories to Mark D. Peters'." Dkt. No. 32 (emphasis in original). The "proof of service" for this document certifies that "on October 27, 2022, a true and correct copy of the 'Respondents' Rule 26(f) Report (6 pages) [was] mailed to" counsel for the plaintiff. Id. at 5. The defendants also filed "Respondent's, response to "United States First Set of Interrogatories" to Rosemary Peters." Id. at 7. The "proof of service" certifies that this document was re-mailed to the plaintiff's counsel on October 27, 2022. Id. at 11. After each of the responses, however, the defendants included the following statement:

> NOTICE, it appears that I, under great stress, and lack of sleep, used the above mailing address of only:
>
> RICHARD G. FROHLING United States Attorney, DAVID A. HUBBERT Deputy Assistant Attorney General, and /s/ Elizabeth A. Kirby ELIZABETH A. KIRBY # 24104199 (TX).
>
> Thinking that it was some special government long zip code, and TX for Texas, or something. Sorry for the mistake. Apparently, that is a BAR Card Number.

Id. at 5, 10.

---

[1] The defendants repeat this same assertion twice more. Dkt. No. 31-1 at 3, ¶¶25, 26. On July 12, 2023, after summary judgment briefing was complete, they also filed, for a second time, their responses to the plaintiff's first set of interrogatories to Mark Peters, dkt. no. 35-5, and for the second time, their responses to the plaintiff's first set of interrogatories to Rosemary Peters, dkt. no. 35-6.

7

c.  The Briefing Filings

On July 12, 2023—over three months after the close of discovery and over two weeks after the plaintiff had closed the summary judgment briefing by filing its reply brief—the court received from the defendants a document titled "REGARDING-**Respondents Response** to United States' First Requests for Admission to Mark D. Peters, and Rosemary Peters." Dkt. No. 35-7 (emphasis in original). The document was dated "__10__/_27_, 2022." Id. at 6. It purported to have been mailed by Mark Peters to the plaintiff's trial counsel on or about the same date. Id. at 7. That same day, the court received from the defendants a document titled "Regarding: Respondent's, Defendant's Opposition/Affidavit to Plaintiff's 6/27/23 second response."[2] Dkt. No. 36. In this document, the defendants averred—contrary to what they had asserted in the affidavit the court had received on June 16, 2023—that the defendants had received the plaintiff's first set of "Admissions from the Plaintiff" on October 13, 2022. Id. at ¶3. They averred that they had sent their responses by certified mail on October 27, 2022. Id. at ¶4. They averred that they had sent a second copy of their responses on December 6, 2022. Id. at ¶5. And they averred that on July 3, 2023, they re-sent the responses. Id. at ¶6.

The plaintiff moved to strike these filings, correctly recounting that neither the federal nor the local rules allow sur-replies. Dkt. No. 37. The court granted the plaintiff's motion to strike and stated that it would not consider the materials received on July 12, 2023 in analyzing the plaintiff's summary judgment motion. Dkt. No. 41.

---

[2] The defendants appear to refer to the plaintiff's reply brief, filed on June 27, 2023. Dkt. No. 34. That brief was authorized by the court's local rules.

### d.    Conclusion

The defendants did not comply with the rules governing discovery. Federal Rule of Civil Procedure Rule 36(a)(3) states that "[a] statement in a request for admission is deemed admitted if not responded to within 30 days of service." The plaintiff has averred in both its proposed findings of fact and in the verified declaration of counsel that, as of May 2023, the defendants had not responded to the plaintiff's October 2022 requests for admission. The defendants have filed conflicting affidavits, averring both that they did *not* see the requests for admission until June 2023 when they were preparing their opposition for summary judgment *and* that they received the requests for admission in October 2022 and responded. Although the court struck their sur-reply, the plaintiffs imply in that document that they mailed their responses to the requests for admission but mis-addressed them due to lack of sleep, stress and a conclusion that counsel's bar number was some kind of address. The court cannot credit the assertion that the defendants did not understand the address for the plaintiff's counsel—her full address (a P.O. Box in Washington, D.C.) appears in the complaint (Dkt. No. 1 at 8) and every document the plaintiff has filed since. The defendants have provided the court with no mailing receipts or other verification of their assertions.

Nor did the plaintiffs comply with the rules governing summary judgment. Civil L.R. 56(b)(2)(A) allows a party opposing a motion for summary judgment to file "a memorandum of law." The defendants filed both an eighteen-page opposition brief (Dkt. No. 32) *and* a five-page memorandum of law (Dkt. No. 33). Civil L.R. 56(b)(2)(B)(i) requires a party opposing summary judgment to file a "concise response to the moving party's statement of facts," that must contain "a reproduction of each numbered paragraph in the moving

9

party's statement of facts followed by a response to each paragraph, including, in the case of any disagreement, specific references to the affidavits, declarations, parts of the record, and other supporting materials replied upon." Civil L.R. 56(b)(2)(B)(ii) requires the concise response to also include "a statement, consisting of short numbered paragraphs, of any additional facts that require the denial of summary judgment, including references to the affidavits, declarations, parts of the record, and other supporting materials relied upon to support the facts described in that paragraph." The defendants did not comply with this rule—they did not file any response to the plaintiff's proposed findings of fact.

The fact that the defendants are representing themselves does not relieve them of the obligation to comply with the federal rules or this court's local rules. Pearl Vision, Inc. v. Room, 541 F.3d 751, 758 (7th Cir. 2008). Because the defendants did not timely respond to the plaintiff's first request for admissions and because they have not opposed the plaintiff's proposed findings of fact, the court deems the requests for admission admitted and accepts as true the facts asserted in the plaintiff's proposed findings of fact.

The court's findings of fact are set forth below.

2.   *The Court's Findings of Fact*

a.   The Defendants' 2008 Tax Year Assessment

In 2008, Mark D. Peters owned and operated a sole proprietorship called Pure Water Concepts. Dkt. No. 29-1 at p. 2, ¶¶1, 2. Through his work in 2008, Mark Peters earned $146,993.01 in income. Id. at p. 3, ¶6; Dkt. No. 28 at ¶16. Mark Peters deposited his 2008 income into two bank accounts he maintained at First Banking Center. Dkt. No. 29-1 at ¶¶8, 13. Of those two bank accounts,

one was held jointly with Rosemary L. Peters and the other was held in the name of "Mark D. Peters DBA Pure Water Concepts." Id. at ¶¶9, 11, 13.

In 2008, Rosemary L. Peters earned $1,901 in wage income from employment with Felle & Beck Inc. Dkt. Nos. 29-3 at p. 2 ¶¶1, 2; 28 at ¶17. Rosemary Peters also received $7,832 in unemployment income from the State of Wisconsin in 2008. Dkt. No. 29-3 at p. 3, ¶¶4, 5. In 2008, Rosemary Peters had an interest in an IRA held by Primerica Shareholder Services. Id. at p. 3, ¶¶6, 7. In 2008, Primerica Shareholder Services distributed $1,340 from that IRA to Rosemary Peters. Id. at p. 3, ¶8; Dkt. No. 28 at ¶17.

On or about November 12, 2010, after the tax return filing deadline had passed, the defendants jointly filed a Form 1040 federal income tax return for tax year 2008 with the Internal Revenue Service ("IRS"), reporting just $703 in taxes owed. Dkt. Nos. 28 at ¶5; 28-1. On their joint income tax return for 2008, the defendants reported to the IRS that their joint income for the year was $21,320. Id. But for tax year 2008, their actual income was $146,993. Dkt. No. 28 at ¶16. The IRS determined the amount of the defendants' actual income for 2008 through an analysis of their bank deposits. Id. at ¶¶ 12–16. The defendants did not pay federal income tax on their income of $146,993 for tax year 2008. Dkt. No. 29-1 at p. 5, ¶15.

Because the defendants underreported their actual 2008 income, they also incorrectly understated their total tax due by $42,678. Dkt. No. 28 at ¶19. A delegate of the Secretary of the Treasury made assessments against the defendants for unpaid 2008 federal income taxes, interest, and civil penalties as identified below. Dkt. Nos. 27 at ¶11; 27-1; 28 at ¶20.

11

| Tax Year | Assessment Type | Assessment Date | Amount Assessed |
|----------|-----------------|-----------------|-----------------|
| 2009 | Income Tax | 7/30/2012 | $19,765.00 |
| | Interest | 7/30/2012 | $1,998.37 |
| | Failure to File Tax Penalty | 7/30/2012 | $4,357.13 |
| | Failure to Pay Tax Penalty | 7/30/2012 | $2,711.10 |
| | | 11/18/2013 | $26.00 |
| | | 10/27/2014 | $2,104.14 |

The IRS gave the defendants notices of the assessments referred to above and made demands for payment on the dates of the assessments. Dkt. Nos. 27 at ¶12; 27-1. As of May 11, 2023, the balance of the 2008 assessments, with accrued interest, totaled $120,165.86. Id. at ¶¶ 11, 24. The defendants owe the Government $120,165.86 regarding their 2008 joint income tax liabilities plus interest that has and will continue to accrue on that amount. Id. at ¶¶11, 24–25.

b.    Defendant Mark Peters's 2009 Tax Year

In 2009, Mark Peters earned $100,382 in self-employment income as a sole proprietor doing business as Pure Water Concepts. Dkt. 29-1 at p. 5, ¶¶17–19; 28 at ¶24. Mark Peters deposited this 2009 income into bank accounts he maintained at First Banking Center. Id. at p. 6, ¶ 22. For the tax year 2009, the IRS determined Mark Peters's income through an analysis of his bank deposits. Dkt. No. 28 at ¶¶23–24. Mark Peters did not pay federal income tax on the $100,382 of self-employment income that he earned in tax year 2009. Dkt. No. 29-1 at p. 6, ¶25. Mark Peters failed to file a federal income tax return with the IRS for tax year 2009. Id. at ¶23.

12

On the dates and in the amounts specified below, a delegate of the Secretary of the Treasury made assessments against Mark Peters for unpaid federal income taxes, interest, and penalties. Dkt. Nos. 27 at ¶17; 27-2; 28 at ¶28.

| Tax Year | Assessment Type | Assessment Date | Amount Assessed |
|----------|-----------------|-----------------|-----------------|
| 2009 | Income Tax | 7/30/2012 | $19,765.00 |
| | Interest | 7/30/2012 | $1,998.37 |
| | Failure to File Tax Penalty | 7/30/2012 | $4,357.13 |
| | Failure to Pay Tax Penalty | 7/30/2012 | $2,711.10 |
| | | 11/18/2013 | $26.00 |
| | | 10/27/2014 | $2,104.14 |

The IRS gave Mark Peters notices of the assessments referred to above and made demands for payment on the dates of each assessment. Dkt. No. 27 at ¶18; 27-2. As of May 11, 2023, Mark Peters owes $47,948.77 for the 2009 assessments plus interest that has—and will—continue to accrue on that amount. Dkt. No. 27 at ¶¶17, 24–25.

c.      Defendant Mark Peters's 2010 Tax Year

In 2010, Mark Peters worked for One Twenty Four LLC. Dkt. Nos. 29-1 at 6-7, ¶¶26–27; 28 at ¶26; 28-4. One Twenty Four reported to the IRS that it paid Mark Peters $2,631 for work he did in 2010. Dkt. Nos. 28 at ¶26; 28-4. That same year, Mark Peters worked for Lightyear Network Solutions LLC. Dkt. No. 29-1 at p. 7, ¶¶28-29. Lightyear Network Solutions reported to the IRS that it paid Mark Peters $661 for the work he did in 2010. Dkt. Nos. 28 at ¶26; 28-4. Mark Peters also worked for Wacker Neuson Corporation in 2010. Dkt. 29-1

13

at p. 7, ¶¶30-31; 28 at ¶26; 28-4. Wacker Neuson reported to the IRS that it paid Mark Peters $1,603 for the work he did in 2010. Dkt. No. 28 at ¶26; 28-4. Finally, Mark Peters worked for Amega Worldwide, Inc. in 2010. Dkt. No. 29-1 at pp. 7-8, ¶¶32–33; 28 at ¶26; 28-4. Amega Worldwide reported to the IRS that it paid Mark Peters $105,969 for the work he did in 2010. Dkt. Nos. 28 at ¶26; 28-4.

For the 2010 tax year, the IRS determined that Mark Peters had income of $110,864 by using information reports that the third parties identified above filed with the IRS. Id. Mark Peters did not pay federal income taxes on the $110,864 he earned in 2010. Dkt. No. 29-1 at p. 8, ¶¶34, 37. Mark Peters failed to file a federal income tax return with the IRS for that year. Id. at ¶¶ 35–36.

On the dates and in the amounts specified below, a delegate of the Secretary of the Treasury made assessments against Mark Peters for unpaid federal income taxes, interest, and penalties for tax year 2010. Dkt. Nos. 27 at ¶¶15, 17; 27-3.

| Tax Year | Assessment Type | Assessment Date | Amount Assessed |
|----------|-----------------|-----------------|-----------------|
| 2010 | Income Tax | 12/02/2013 | $36,016.00 |
| | Interest | 12/02/2013 | $3,674.88 |
| | Failure to File Tax Penalty | 12/02/2013 | $8,103.60 |
| | Failure to Pay Tax Penalty | 12/02/2013 | $5,762.56 |
| | | 11/02/2015 | $3,241.44 |

The IRS gave Mark Peters notices of the 2010 assessments referred to above and made demands for payment on the dates of each assessment. Dkt.

14

No. 27 at ¶18; 27-3. As of May 11, 2023, Mark Peters owes $84,220.23 for the 2010 assessments plus interest that has and will continue to accrue on that amount. Id. at ¶¶17, 19.

### d. Defendant Mark Peters's 2011 Tax Year

In 2011, Mark Peters worked for One Twenty Four LLC. Dkt. Nos. 29-1 at pp. 8, 9, ¶¶38–39; 28 at ¶27; 28-5. One Twenty Four reported to the IRS that it paid Mark Peters $2,358 for the work he did in 2011. Dkt. No. 28 at ¶27; 28-5. That same year, Mark Peters worked for Wacker Neuson Corporation. Dkt. No. 29-1 at p. 9, ¶¶40-41; 28 at ¶27; 28-5. Wacker Neuson reported to the IRS that it paid Mark Peters $1,175 for the work he did in 2011. Dkt. Nos. 28 at ¶27; 28-5. Mark Peters also worked for Amega Worldwide, Inc. Dkt. No. 29-1 at p. 9, ¶¶42-43; 28 at ¶27; 28-5. Amega Worldwide reported to the IRS that it paid Mark Peters $12,144 for the work he did in 2011. Dkt. Nos. 28 at ¶27; 28-5.

For the tax year 2011, the IRS determined that Mark Peters had income of $15,677 by using information reports that the third parties identified above filed with the IRS. Dkt. Nos. 28 at ¶27; 28-5. Mark Peters did not pay federal income taxes on the $15,677 he earned in 2011. Dkt. No. 29-1 at pp. 9-10, ¶¶44, 47. Mark Peters failed to file a federal income tax return with the IRS for that year. Dkt. No. 29-1 at p. 10, ¶¶45-46.

On the dates and in the amounts specified below, a delegate of the Secretary of the Treasury made assessments against Mark Peters for unpaid federal income taxes, interest, and penalties for tax year 2011. Dkt. No. 27 at ¶¶17, 38; 27-4.

| Tax Year | Assessment Type | Assessment Date | Amount Assessed |
|---|---|---|---|
| 2011 | Income Tax | 12/15/2014 | $2,434.00 |
| | Interest | 12/15/2014 | $248.31 |
| | Failure to File Tax Penalty | 12/15/2014 | $547.65 |
| | Failure to Pay Tax Penalty | 12/15/2014 | $389.44 |
| | | 10/31/2016 | $219.06 |

The IRS gave Mark Peters notices of the assessments referred to above and made demands for payment on the dates of each assessment. Dkt. No. 27 at ¶¶18, 39; 27-4. As of May 11, 2023, Mark Peters owes $5,521.09 for the 2011 assessments plus interest that has and will continue to accrue on that amount. Dkt. No. 27 at ¶¶ 24, 25.

          e.      Defendant Rosemary Peters's 2009 Tax Year

In 2009, Rosemary Peters received $10,055 in unemployment income from the state of Wisconsin. Dkt. No. 29-3 at p. 4, ¶¶14–15; 28 at ¶23; 28-3. Rosemary Peters did not pay federal income taxes on the $10,055 unemployment income she received in 2009. Id. at p. 5, ¶19. Rosemary Peters failed to file a federal income tax return with the IRS for tax year 2009. Dkt. No. 29-4 at p. 5, ¶¶17–18; 28 at ¶21. For tax year 2009, the IRS determined Rosemary Peters' income through an analysis of bank deposits and a review of third-party payor information returns filed with the IRS. Dkt. Nos. 28 at ¶21; 28-3.

On the dates and in the amounts specified below, a delegate of the Secretary of the Treasury made assessments against Rosemary Peters for

unpaid federal income taxes, interest, and penalties for tax year 2009. Dkt. Nos. 27 at ¶ 21; 27-5.

| Tax Year | Assessment Type | Assessment Date | Amount Assessed |
|---|---|---|---|
| 2009 | Income Tax | 7/30/2012 | $7,356.00 |
| | Interest | 7/30/2012 | $717.82 |
| | Failure to File Tax Penalty | 7/30/2012 | $1,565.10 |
| | Failure to Pay Tax Penalty | 7/30/2012 | $973.84 |
| | | 10/10/2016 | $765.16 |

The IRS gave Rosemary Peters notices of the assessments referred to above and made demands for payment on the dates of each assessment. Dkt. No. 27 at ¶22; 27-5. As of May 11, 2023, Rosemary Peters owes $17,016.59 for the 2009 assessments plus interest that has and will continue to accrue on that amount. Dkt. No. 27 at ¶¶24, 25.

   f.  Amounts Currently Due From Each Defendant

Statutory additions, such as interest, continue to accrue until the liabilities are paid in full. Dkt. No. 27 at ¶25. As of May 11, 2023, the total balances for each period, including those statutory additions, are as follows:

| Party | Tax Period | Balance as of May 11, 2023 |
|---|---|---|
| Mark Peters & Rosemary Peters | 2008 | $120,165.86 |
| Mark Peters | 2009 | $47,948.77 |
| Mark Peters | 2010 | $84,220.23 |
| Mark Peters | 2011 | $5,521.09 |
| Rosemary Peters | 2009 | $17,016.59 |

Dkt. No. 27 at ¶24.

C.    Conclusions of Law

In their brief in opposition to summary judgment, the defendants assert
that because the Articles of Confederation of 1777 state that the "style of this
confederacy shall be, 'The United States of America,'" the plaintiff does not
have standing "to sue in this administrative court for its identifying name does
not match exactly what the stated constitution demands." Dkt. No. 31 at ¶4.1.
They assert that there is no evidence that they resided "in land of 'The United
States of America', as associated with the years of 2008, 2009, 2010, or 2011."
Id. at ¶3.1. They assert that there is no evidence that they lived or did business
in Racine County, Wisconsin, "for such is, as a matter of law, likened to land
described in Article 1, Section 8, Clause 17, 'Constitution for the United States
of America'." Id. at ¶¶5.1, 6.1. They assert that there is "no authorization for
any person of 'The United States of America' to administrate collection of taxes,
associated with revenue, that are not internal to 'The United States of
America'." Id. at ¶6.1. The defendants assert that they are "of common law
marriage, independent of any state of 'The United States of America'." Id. at ¶7.

In their (unauthorized) sur-reply brief, the defendants conclude by
stating, "If the court has jurisdiction to compel the Defendants to the limited
jurisdiction of the captioned court, then so be it, and there the Plaintiff will be
forced to evidence what is needed, as a matter of law, and of fact." Dkt. No. 35
at 7. In each of their briefs or memoranda, the plaintiffs include a notice
stating that the filing of the document "can not be used as evidence of any form
of jurisdiction over Mark Peters, or Rosemary Peters." See, e.g., Id. at 1.

The defendants do not directly assert that this federal district court does
not have subject-matter jurisdiction, but they imply it. The plaintiff has
brought a civil complaint to reduce unpaid tax assessments to a judgment at

18

the request of a delegate of the U.S. Attorney General under 26 U.S.C. §7401. Dkt. No. 1. This federal court has subject-matter jurisdiction over that suit under multiple authorities. First, because the complaint involves a federal statute, the court has "federal question" jurisdiction under the U.S. Constitution and 28 U.S.C. §1331. Second, 28 U.S.C. §1340 gives United States District Courts (such as this one) "original jurisdiction of any civil action arising under any Act of Congress providing for internal revenue, or revenue from imports or tonnage except matters within the jurisdiction of the Court of International Trade." Despite the defendants' arguments that that the plaintiff cannot prove that their revenue was "internal," the allegations in the complaint fall within the court's jurisdiction under §1340. Third, 28 U.S.C. §1345 gives district courts original jurisdiction "of all civil actions, suits or proceedings commenced by the United States, or by any agency or officer thereof expressly authorized to sue by Act of Congress." The United States is the plaintiff in this case, so this district court has original jurisdiction of the suit, the defendants' unsupported arguments about whether the plaintiff's name matches the Articles of Confederation notwithstanding. Finally, 26 U.S.C. §7402 gives district courts jurisdiction to issue orders, processes and judgments and to enforce summons as necessary for the enforcement of internal revenue laws. This district court has subject-matter jurisdiction.

The defendants' assertion that there is no evidence that they live, or did business in, Racine County, Wisconsin, or in a "land in the United States of America," and that they are independent of the United States of America, is without merit. The complaint alleges that the defendants reside in Racine County, Wisconsin. Dkt. No. 1 at ¶¶6, 7. The plaintiff provided a copy of the defendants' 2008 IRS 1040 tax return, where the defendants listed their

19

address as "1725 51st ST, Union Grove WI 53182." Dkt. No. 28-1 at 1. The defendants filed a "conditional answer" to the complaint, listing their "mailing location" as "15941 Durand Ave, Lot 45D, Union Grove, Wisconsin, [near 53182-9477]," although they asserted that this was "**not** a resident address, not within land of the United States." Dkt. No. 5 at 1. The defendants filed an objection/correction to the plaintiff's Rule 26(f) report, listing their address as 15941 Durand Ave., Lot 45D, Union Grove, WI 53182-9477. Dkt. No. 10 at 4. Union Grove, Wisconsin is located in Racine County, Wisconsin. https://rcedc.org/why-racine/communities/union-grove/. Wisconsin is one of the fifty states that make up the United States of America, and land in Wisconsin is land with the United States of America.

Finally, the United States has standing to bring this claim. Under 26 U.S.C. §6321, which provides that the amount of a delinquent taxpayer's liability shall be a lien in the favor of the United States upon all property and rights to property belonging to the taxpayer, the United States has a legally protected interest. Section 7403 states:

> In any case where there has been a refusal or neglect to pay any tax, or to discharge any liability in respect thereof, whether or not levy has been made, the Attorney General or his delegate, at the request of the Secretary, may direct a civil action to be filed in a district court of the United States to enforce the lien of the United States under this title with respect to such tax or liability or to subject any property, of whatever nature, of the delinquent, or in which he has any right, title, or interest, to the payment of such tax or liability. For purposes of the preceding sentence, any acceleration of payment under section 6166(g) shall be treated as a neglect to pay tax.

26 U.S.C. §7403. The complaint states that it has been "authorized and requested by a delegate of the Secretary of the Treasury and is commenced at the direction of a delegate of the United States Attorney General pursuant to 26 U.S.C. § 7401." Dkt. No. 1 at ¶2.

Turning to the merits of the plaintiff's motion, IRS assessments are "entitled to a legal presumption of correctness—a presumption that can help the Government prove its case against a taxpayer in court." United States v. Fior D'Italia, 536 U.S. 328, 242 (2002); see also JPMorgan Chase & Co. v. Comm'r, 530 F.3d 634, 638 (7th Cir. 2008) ("As a general matter, the Commissioner's deficiency determinations are 'presumptively correct.'"). The government may establish the validity of a tax assessment by submitting an IRS Form 4340. United States v. Pansier, Case No. 21-2871, 2022 WL 2829759, *3 (7th Cir. 2022); Hefti v. I.R.S., 8 F.3d 1169, 1172 (7th Cir. 1993). "Courts will not look behind an assessment to evaluate the procedure and evidence used," so long as the assessment is not shown to be "without rational foundation or arbitrary and erroneous." See Ruth v. United States, 823 F.2d 1091, 1093 (7th Cir. 1987). The defendants may overcome the presumption of correctness "by a showing that the assessment was computed in an incorrect manner." United States v. Schroeder, 900 F.2d 1144, 1147 (7th Cir. 1990).

The plaintiff submitted proof of valid assessments by filing the Form 4340s for the years 2008, 2009, 2010 and 2011. Dkt. Nos. 27-1 thru 27-5. IRS Revenue Officer/Advisor Pat Kosmatka avers that the certified Form 4340 reflects "the type and amount of tax assessed, payments made, or credits applied toward the assessed tax liability, and certain other information relevant to the taxpayer's account for a specified tax period, including whether the taxpayer has filed a tax return." Dkt. No. 27 at ¶7. Kosmatka explained how he calculated and tracked accrued interest through May 11, 2023, as well as failure-to-pay penalty calculations. Dkt. No. 27 at ¶24. For tax year 2008, the defendants have an unpaid balance of $120,165.86. Mark Peters has an

21

unpaid balance of $47,948.77 for the tax year 2009, $84,220.23 for the tax year 2010, and $5,521.09 for the tax year 2011. Id. at ¶17. Rosemary Peters has an unpaid balance of $17,016.59 for the tax year 2009. Id. at ¶21.

IRS Agent Greg Jackson conducted the investigation and filed his declaration explaining how he utilized information return data and conducted a "bank deposit analysis." Dkt. No. 28 at ¶10. Jackson obtained bank statements from First Banking Center, where the defendants' deposited their income in 2008 and 2009. Dkt. No. 28 at ¶¶12-19, 24, 25; Dkt. No. 29-1 at pp. 3-6, ¶¶7-13, 20-22. Jackson explained that Mark Peters's employers reported paying him a total of $110,864 in 2010 and $15,677 in 2011. Dkt. No. 26 at ¶¶28, 30, 32, 34, 35, 42, 44, 46, 47). Jackson attached the transcripts from the IRS's Information Returns Processing system, which maintains the records of information returns (tax documents filed by third parties with the IRS to report certain types of transactions or payments). Dkt. Nos. 28-2 thru 28-5.

The plaintiff's evidence—the certified assessments from Form 4340 for each year and the declarations with the damages calculations—satisfies the plaintiff's burden. The burden then shifts to the defendants to overcome the presumption of correctness by demonstrating by a preponderance of the evidence that the tax assessment is erroneous. The defendants have not done so.

First, the defendants' arguments assume that the IRS has no authority to collect taxes on their income. The Seventh Circuit Court of Appeals—whose decisions bind this court—has rejected similar arguments as plainly frivolous. See United States v. Sloan, 939 F.2d 499, 500 (7th Cir. 1991); McLaughlin v. Comm'r, 832 F.2d 986, 987 (7th Cir. 1987) ("The notion that the federal income tax is contractual or otherwise consensual in nature is not only utterly without

foundation but, despite McLaughlin's protestations to the contrary, has been repeatedly rejected by the courts."). "All individuals, natural or unnatural, must pay federal income tax on their wages," regardless of whether they requested, obtained or exercised any privilege from the federal government. Lovell v. United States, 755 F.2d 517, 519 (7th Cir. 1984). The defendants argue that they did not live in or earn taxable revenue that was "internal to the United States of America lands," dkt. no. 31, but the plaintiff's investigation proved otherwise, dkt. no. 28.

Second, the defendants' opposition brief challenges Kosmatka and Jackson to prove they are agents with the IRS and to support the statements made in their declarations. Kosmatka, Jackson and Kirby *have* proved that they are agents with the IRS by attesting to that fact in their declarations, and they signed those declarations under the penalty of perjury and supported them with admissible evidence.

The defendants' opposition consists of general denials ("there is no evidence of internal revenue") or conclusory arguments. Id. at 8-15. The defendants repeatedly assert:

> There is no evidence that the Commissioner of the Internal Revenue gave formal notice to have any person to assess Mark Peters, or Rosemary Peters income that was not revenue generated internally in the Plaintiff land, or under a contract with the Plaintiff.

Dkt. No. 31 at 10-15. The evidence in the record establishes that the defendants did receive notice and the court does not know what the defendants mean when they say their revenue was not "generated internally in the Plaintiff land."

The court has reviewed the defendants' document labeled "stated facts, in Affidavit Form." Dkt. No. 31-1. They deny taking any action to create "any classification as 'taxpayer." Id. at 1 (emphasis in original). This assertion is

23

based on a misapprehension of the tax code. Section 1 of the Internal Revenue Code imposes the federal income tax on taxable income of U.S. citizens and residents. 27 U.S.C. §1, *et. seq.* There was no requirement for the defendants to take any action to create the classification as long as they earned taxable income. The defendants also deny having internal income in the "'The United States of America' land," and claim that there is "no evidence that the Commissioner of the Internal Revenue has authorized the Secretary of the Treasury to make any assessment of taxes due upon Affiants," and "that they have never filed any return for no authorization has come from the Commissioner of the Internal Revenue as to any requirement for any return to be filed." Id. at 1-2. But their employers filed W-2s with the IRS, Jackson documented the income deposited in their bank account and the IRS filed proof of the assessments. The defendants' conclusory and unsupported statements do not create a genuine issue of material fact, particularly in the face of the plaintiff's evidence.

Finally, the court has explained that on the day they filed their opposition, the defendants filed a document titled "Respondents, response to 'United States First Set of Interrogatories' to Mark D. Peters.'" Dkt. No. 32 at 1 (emphasis in original). The court first assumed that the defendants may have intended this filing to be their (late) response to the plaintiff's request for admissions. The unverified responses to interrogatories, however, appear to contain additional arguments. Id. Without any support, the defendants assert that they were misled by IRS agents and CPAs and never received notice of any tax due, and they continue to assert that the court lacks jurisdiction. Dkt. No. 32.

24

Because the defendants have failed to present any evidence that creates a genuine issue of material fact, the court will grant the plaintiff's motion for summary judgment.

## III. Defendants' Motion for Disclosure of All Grand Jury Proceedings (Dkt. No. 39)

On October 2, 2023, the defendants filed a motion for disclosure of the grand jury proceedings to provide there was a grand jury impaneled that handed down an indictment. Dkt. No. 39. The defendants request copies of all testimony and evidence heard by the grand jury, along with information about the court reporter. Id. at 2. The plaintiff did not respond, presumably because this is a civil lawsuit. It was commenced with the plaintiff's filing of a civil complaint. Had this been a federal *criminal* proceeding, it would have been commenced by an *indictment* returned by a grand jury. But there is no grand jury in civil cases. In any event, the defendants have not cited any authority in support of their request or explained why they need the information they seek. More to the point, the court is granting the plaintiff's motion for summary judgment and will award judgment in favor of the plaintiff, so there will be no further proceedings.

## IV. Defendants' Motion for Dismissal, Due Process Violation, Want of Jurisdiction (Dkt. No. 40)

On December 22, 2023, the defendants filed a document title "regarding: Motion for Dismissal, due process violation, want of jurisdiction." Dkt. No. 40. The Clerk of Court did not docket the document as a motion, but the defendants appear to seek dismissal on the ground that the court has no authority to proceed and that the court lacks personal jurisdictional and "territorial jurisdiction." Id. at 2. They continue to assert that "they have not elected to become a United States **citizen**, or **resident** in lands of the Plaintiff

25

limited jurisdiction, or have any **contracts** with Plaintiff that create a requirement for **internal** revenue records or creation of any associated returns." Id. at ¶8 (emphasis in original). The defendants threaten that

> [i]f this case is not dismissed for the above cause, or any other cause, Respondents will convene an American People's common law court to **quite** the/this Plaintiff's administrative claim/case, and the jury will be limited to state nationals, and all US citizens, and administrators, will be petitioned to be barred from jury participation. The People are superior to the People's created administrative (military) courts, and the People have the right to determine the law and the facts of the cases that occur in their receptive jurisdictions, as of a matter of right of man.

Id. at ¶13 (emphasis in original).

To the extent that the defendants are attempting to bring a motion to dismiss under Rule 12(b)(1) for lack of subject-matter jurisdiction, the court has rejected that argument. The government's authority to tax and the judiciary's authority to adjudicate cases are established by the United States Constitution. The defendants have not cited any legal authority in support of their position.

## V. Conclusion

The court **GRANTS** the plaintiff's motion for summary judgment. Dkt. No. 24.

The court **GRANTS** the plaintiff's motion for summary judgment on Count I of the complaint in favor of the plaintiff and against Mark D. Peters and Rosemary L. Peters, jointly and severally, for the tax year 2008 in the amount of $120,165.86 plus statutory additions accruing after May 11, 2023.

The court **GRANTS** the plaintiff's motion for summary judgment on Count II of the complaint in favor of the United States and against Mark D. Peters for tax years 2009, 2010 and 2011 in the amount of $137,690.09 plus statutory additions accruing after May 11, 2023.

26

The court **GRANTS** the plaintiff's motion for summary judgment on Count III of the complaint in favor of the United States and against Rosemary L. Peters for tax year 2009 in the amount of $17,016.59 plus statutory additions accruing after May 11, 2023.

The court **DENIES** the defendants' motion for disclosure of all grand jury proceedings. Dkt. No. 39.

The court **DENIES** the defendants' motion for dismissal, due process violation, want of jurisdiction. Dkt. No. 40.

The court **ORDERS** that this case is **TERMINATED**. The clerk will enter judgment in favor of the plaintiff.

Dated in Milwaukee, Wisconsin this 31st day of March, 2024.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**

27